UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 4:91-cr-00095 |
| | § | |
| REYMUNDO MONTOYA-ORTIZ | § | |

**REYMUNDO MONTOYA-ORTIZ'S REPLY IN SUPPORT OF MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT......................................................................................................................3

    A. Mr. Montoya-Ortiz's Age, Medical Condition, and Length of Incarceration Compel a Sentence Reduction Under U.S.S.G. § 1B1.13. .................................................3

    B. BOP's Failure to Properly and Timely Treat Mr. Montoya-Ortiz's Conditions Is an Independent Ground for Early Release. ...............................................................7

    C. Mr. Montoya-Ortiz's Release Plan is Sufficient. ................................................8

    D. Mr. Montoya-Ortiz's Release is Consistent with the Sentencing Factors. .........9

III. CONCLUSION.................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Pepper v. United States*,
   562 U.S. 476 (2011)......................................................................................................2, 10

*United States v. Bush*,
   No. CR06-5504 BHS, 2021 WL 135869 (W.D. Wash. Jan. 14, 2021) ...............................4, 5

*United States v. Cantu-Rivera*,
   No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ............................................6

*United States v. Ebbers*,
   432 F. Supp. 3d 421 (S.D.N.Y. 2020)......................................................................................4

*United States v. Ennis*,
   No. EP-02-CR-1430, 2020 WL 2513109 (W.D. Tex. May 14, 2020)...........................3, 4, 6

*United States v. Greene*,
   516 F. Supp. 3d 1 (D.D.C. 2021)..............................................................................................4

*United States v. Johnson*,
   619 F. Supp. 3d 81 (D.D.C. 2022)............................................................................................8

*United States v. Lii*,
   528 F. Supp. 3d 1153 (D. Haw. 2021).......................................................................................9

*United States v. Montoya-Ortiz*,
   7 F.3d 1171 (5th Cir. 1993) .....................................................................................................12

*United States v. Reece*,
   No. CR H-94-103-8, 2020 WL 1659854 (S.D. Tex. Mar. 27, 2020) .......................................5

**Statutes**

18 U.S.C. § 3582(c)(1)(A) ..............................................................................................................1, 3

18 U.S.C. § 4205(g) ...........................................................................................................................9

18 U.S.C. § 3553(a) ...................................................................................................................10, 11

U.S.S.G. § 1B1.13..............................................................................................................................3

U.S.S.G. § 1B1.13, cmt. n.1(A) .........................................................................................................3

U.S.S.G. § 1B1.13, cmt. n.1(B) .....................................................................................................2, 3

**Other Authorities**

28 CFR § 571.61 ................................................................................................................9

I.      **INTRODUCTION**

Congress had people like Reymundo Montoya-Ortiz in mind when it created the compassionate release framework and reinforced it through the First Step Act. 18 U.S.C. § 3582(c)(1)(A). Mr. Montoya-Ortiz is an elderly man who committed a non-violent drug offense over thirty years ago. He suffers from serious, age-related medical conditions, as affirmed by three experienced and highly credentialed outside medical experts looking at his records. He has already served more than three decades in prison—nearly half his life—while in significant physical pain. And he has an exemplary prison record—including work as a tutor, mentor, and religious leader—with multiple Bureau of Prison ("BOP") staff members supporting his release. In short, Mr. Montoya-Ortiz exemplifies the exceptional circumstance justifying a compassionate release.

The government does not dispute much of what favors Mr. Montoya-Ortiz's early release.[1] Instead, it argues principally that Mr. Montoya-Ortiz's medical conditions do not rise to a "terminal or debilitated medical condition" and therefore cannot present "extraordinary and compelling" circumstances under 18 U.S.C. 3582(c)(1)(A). Opp. at 6-8. But Mr. Montoya-Ortiz does not argue that he meets such a standard, which is created by U.S. Sentencing Guideline § 1B1.13, cmt. n.1(A)(i). He meets the *independent age-related* standard that establishes an extraordinary and compelling reason favoring release wherein a "defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). Applying *that* standard, the medical experts

---

[1] As a procedural matter, the government's brief is untimely. The Court directed the government to file a response "on or before Monday, September 18, 2023." Dkt. 167. The government filed its brief on September 21, 2023, without requesting an extension or explaining why it failed to comply with the Court's deadline.

detailed how Mr. Montoya-Ortiz suffers serious physical deterioration because of aging. Nothing in the handful of medical records the government cites seriously calls that conclusion into doubt.

The government's other arguments are easily dismissed. Mr. Montoya-Ortiz's release plan is more than sufficient. Opp. 9-10. He has specified (1) where he will reside (Ojinaga, Mexico); (2) how he will support himself (through the family farm, work as a religious leader, and the pledged financial support of his family); (3), where he will receive medical treatment (in nearby medical facilities); and (4) and how he will pay for treatment (Mexico has public healthcare and his family has pledged financial support if needed). The government cites no authority holding that such a release plan is legally insufficient when the other criteria for release have been met.

The Court should also reject the government's claim that compassionate release would be inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). Opp. 10-11. Mr. Montoya-Ortiz has served more than three decades in prison for a non-violent drug crime and has spent much of that time in physical pain. At the same time, his BOP record demonstrates the profound transformation he has undergone in prison. Mot. 24-27. As the Supreme Court has agreed, "[i]n assessing deterrence, protection of the public, and rehabilitation…there would seem to be no better evidence than a defendant's post-incarceration conduct." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting *United States v. McManus*, 496 F.3d 846, 853 (8th Cir. 2007) (Melloy, J., concurring)). That evidence here is compelling.

The Court should grant Mr. Montoya-Ortiz's motion and resentence him to time served.[2]

---

[2] The government acknowledges that Mr. Montoya-Ortiz "has exhausted administrative remedies" such that his motion is procedurally proper. Opp. 4. The government nonetheless asserts that the "BOP does not have record of" Mr. Montoya-Ortiz's second administrative request to the BOP. Opp. 4. Mr. Montoya-Ortiz's motion includes a copy of that request (at Ex. N).

II.   **ARGUMENT**

   A.   **Mr. Montoya-Ortiz's Age, Medical Condition, and Length of Incarceration Compel a Sentence Reduction Under U.S.S.G. § 1B1.13.**

The government's primary argument against Mr. Montoya-Ortiz's early release is that "for an inmate to qualify for compassionate release due to medical circumstances, he or she must be suffering from a terminal or debilitated medical condition," which it claims Mr. Montoya-Ortiz fails to satisfy. Opp. 6-8 (citing U.S.S.G. § 1B1.13, cmt. n.1(A) ("Note 1(A)")).[3] But Mr. Montoya-Ortiz does not contend that he should be released under Note 1(A). *See* Mot. 16-18. He meets the ***independent age-related standard*** in § 1B1.13, cmt. n.1(B) ("Note 1(B)"); *see United States v. Ennis*, No. EP-02-CR-1430, 2020 WL 2513109, at *6 (W.D. Tex. May 14, 2020) (explaining that the standards in Notes 1(A) and 1(B) are "separate and apart"); Mot. 17 n.57 (explaining the difference between the two provisions).

Note 1(B) establishes an extraordinary and compelling reason favoring release where a "defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."[4] It does not require a "terminal or debilitated" illness, but is a lower medical standard that "requires only a 'serious deterioration in physical or

---

[3] Curiously, the government fails to cite Note 1(A), instead citing only to the governing statute that does not include the standard it relies on. Opp. 6. As for the statute, the government cites to both 18 U.S.C. § 3582(c)(1)(A) and § 4205(g). Section 4205(g), however, was repealed effective November 1, 1987, and is controlling only for inmates whose offenses occurred before then. Mr. Montoya-Ortiz's offenses occurred in 1990.

[4] Amendments to the Sentencing Guidelines that take effect on November 1 will move the standards contained in Notes 1(A) and 1(B) into the Guideline text itself. There is no substantive change to the standards, but their placement as separate Guideline subsections within § 1B1.13 confirms their independent nature. *See* Amendments to the Sentencing Guidelines, U.S. Sent'g Comm'n (Apr. 27, 2023), www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

mental health.'" *Id.*; *see also United States v. Greene*, 516 F. Supp. 3d 1, 23 (D.D.C. 2021). ("[N]othing in the 'Age of the Defendant' commentary mandates a showing … that a 65-plus-year-old defendant necessitates intensive treatment because of his deteriorating health, or that he is unable to care for himself.… [T]o the contrary, a mere showing that the defendant is experiencing 'a serious deterioration in physical or mental health because of the aging process' suffices."); *United States v. Bush*, No. CR06-5504 BHS, 2021 WL 135869, at *3 (W.D. Wash. Jan. 14, 2021). The government does not contend otherwise.

Regarding the application of the age-related Note 1(B) standard to Mr. Montoya-Ortiz, the Court should reject the government's conclusory statement that Mr. Montoya-Ortiz does "not experienc[e] a serious deterioration in physical or mental health due to the ageing process. He is also capable of taking care of himself while in prison." Opp. 9. The government fails to provide any legal or factual citation for these statements. Indeed, as courts have recognized, whether an inmate can "tak[e] care of himself while in prison" is not a requirement under Note 1(B) to qualify for compassionate release. *See Ennis*, 2020 WL 2513109, at *7 (an inability for self-care in prison is "not a required factor" under Note 1(B)); *United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020) (same).

The government, moreover, ignores the opinions of three highly qualified medical experts: Dr. Eileen Couture, an emergency medicine physician specializing in correctional medicine; Dr. William Weber, a professor of emergency medicine at Harvard Medical School; and Dr. Robert Frykberg, a leading specialist on the diabetic Charcot foot. *Id.* Each of these experts have examined Mr. Montoya-Ortiz's records and concluded that he suffers from a serious age-related deterioration in his physical health. Mot. 2-3. The government does not dispute their credibility, credentials, or the basis for their opinions.

Nor does the government have an answer to the case law granting motions for compassionate release pursuant to Note 1(B) in similar medical circumstances. Mot. 16-17 (describing cases); *see also United States v. Reece*, No. CR H-94-103-8, 2020 WL 1659854, at *1 (S.D. Tex. Mar. 27, 2020) (granting release for elderly inmate with viral hepatitis C, an enlarged prostate, and chronic kidney disease); *Bush*, 2021 WL 135869, at *3 (granting release for elderly inmate with uncontrolled hypertension, declining kidney function, and only six teeth).

The only factual contentions the government makes about Mr. Montoya-Ortiz's condition are in the context of whether he has a "terminal or debilitated" illness. Opp. 7-8. Those contentions are meritless.

***First***, the government claims that Mr. Montoya Ortiz's diabetes is controlled, because "he takes insulin regularly" and has been "prescribed a diabetic supplement to control his blood sugar." Opp. 7. But the BOP's records repeatedly describe Mr. Montoya-Ortiz as suffering from uncontrolled Type II Diabetes notwithstanding his insulin use. *See* Ex. E at RMONTOYA-ORTIZ_BOPMED_000013, 000033, 000164, 000300, 000445. Nor is it clear what "diabetic supplement" the government is describing. To the extent the government is referring to Mr. Montoya-Ortiz's "Diabetic Supp-Accu-Chek Safe-T Pro" (*see* Opp. Ex. 3 at 3), that is a piercing device used with a glucometer to check blood sugar. Third, regardless of whether one categorizes Mr. Montoya-Ortiz's diabetes as uncontrolled, the medical experts have detailed how his diabetes has caused a serious deterioration in his health, and how that deterioration will continue rapidly. *See, e.g.*, Mot. Ex. B, Weber Decl. at 1-3. The government offers no response to either those findings or the fact that courts have found diabetes and the illnesses accompanying diabetes in the elderly as helping establish "serious deterioration in physical health due to the aging process." *See,*

*e.g., Ennis*, 2020 WL 2513109, at *6; *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019).

***Second***, the government argues that Mr. Montoya-Ortiz's "medical records … do not reflect" that his Charcot feet makes it 'difficult for him to walk' or that he is 'at risk for amputation.'" Opp. 7. But all three outside medical experts disagree, finding based on years of medical records that the degenerative nature of Charcot foot makes it extremely difficult for Mr. Montoya-Ortiz to walk and that he is at risk for foot amputation. Mot. Ex. C, Frykberg Ltr. at 2 (Mr. Montoya-Ortiz's feet deformities place him "at the highest risk not only for ulcers and amputation, but for ankle, leg, and hip fractures."); Mot. Ex. A, Couture Decl. at 2; Mot. Ex. B, Weber Decl. at 2. BOP records, moreover, confirm that Mr. Montoya-Ortiz has undergone "limb salvage/debridement" (the removal of damaged tissue to help salvage a limb). Mot. Ex. E at RMONTOYA-ORTIZ_BOPMED_000473. The only documents the government cites for its contention are those showing that Mr. Montoya-Ortiz has received "wound care" through the years, and notes from a recent appointment stating that one of those wounds has improved. Opp. 7. But that only confirms Mr. Montoya-Ortiz's condition; he suffers from a degenerative foot disorder that has required consistent attention, that has led to multiple wounds, and that is incurable, regardless of whether an individual wound may improve before a new one emerges.

***Third***, the government contends that "Defendant's medical records do not support" his "claim that he has 'severe vision loss' and is legally blind in his right eye due to cataracts," and that "he is not getting the proper care." Opp. 7. Not so. Mr. Montoya-Ortiz's medical records describe his right eye vision as 20/200—the definition of legally blind. Mot. Ex. E at RMONTOYA-ORTIZ_BOPMED_000212. One record notes he was "unable to see eye chart" out of his right eye. *Id.* Another, from November 2021, recommended that Mr. Montoya-Ortiz have a

cataract removed at that time. *Id.* at 000133. Examining those records, Dr. Weber agreed in July 2023 that "[h]is right eye is legally blind due to a cataract and his ophthalmologist recommended that the prison schedule him for surgery in his right eye in 2021 (9/29/21)," and "[t]his has still not happened." Mot. Ex. B at 3. Dr. Weber also described the myriad risks from delay, including a worsening of Mr. Montoya-Ortiz's feet because of accidents. *Id.* Although the government observes that Mr. Montoya-Ortiz finally received cataract surgery shortly after Dr. Weber submitted his expert report, Opp. 8, that delay in scheduling the surgery shows the inability or unwillingness of BOP to provide timely care.

***Finally***, the government glosses over Mr. Montoya-Ortiz's other serious medical conditions: "chronic kidney disease, hypertension/high blood pressure, pain and inflammation in his right hand, anemia, small vessel disease, and peripheral arterial disease." Opp. 8. The government claims instead that Mr. Montoya-Ortiz "has been placed in and has been seen by the Chronic Care Clinic" and "is on the necessary supplements to control his conditions," without any citation to what "supplements" he is on for which condition. Opp. 8. If anything, the government's recognition that Mr. Montoya-Ortiz is in the Chronic Care Clinic confirms that his conditions are serious and, indeed, chronic. *See also* Mot. 7-10 (detailing Mr. Montoya-Ortiz's other conditions).

### B. BOP's Failure to Properly and Timely Treat Mr. Montoya-Ortiz's Conditions Is an Independent Ground for Early Release.

Mr. Montoya-Ortiz's motion described how a BOP failure to provide timely and adequate medical care independently provides an extraordinary and compelling reason for compassionate release, as courts have held. Mot. 19-23. The government does not disagree, and the government says nothing about three of the four specific instances Mr. Montoya-Ortiz provided as examples of the failure to provide him timely and adequate care: (1) the failure to provide a recommended arterial doppler; (2) the failure to provide flat foot reconstruction; and (3) the failure to provide a

7

pain management specialist. Mot. 20. The government's citation to Mr. Montoya-Ortiz's recent eye surgery, moreover, only confirms the unjustifiable delay in providing that surgery—more than a year and a half after it was recommended. *See* Mot. Ex. E at RMONTOYA-ORTIZ_BOPMED_000133.

> C. **Mr. Montoya-Ortiz's Release Plan Is Sufficient.**

Apart from the medical issues, Mr. Montoya-Ortiz has more than fulfilled what courts look to in determining the sufficiency of a release plan.[5] He has specified (1) where he will live—in Ojinaga, Mexico in his family home that still has his personal effects; (2) how he will support himself (through his family farm, religious work, and the support of family); (3) where he will receive medical treatment—at Chistus Muguerza Del Parque Hospital; and (4) how he will pay for treatment (Mexico has a public healthcare system, and his family has pledged to help with any additional costs). His plan is detailed, concrete, and corroborated by numerous letters of support from family and friends. *See* Exs. F, J, H, I, K (letters); Mot. 32. That easily satisfies the release plan requirement. *See, e.g.*, *United States v. Johnson*, 619 F. Supp. 3d 81, 99 (D.D.C. 2022) (granting early release where release plan stated inmate would live with girlfriend and had no job lined up); *United States v. Lii*, 528 F. Supp. 3d 1153, 1167 (D. Haw. 2021) (granting early release where inmate would live with his sister who would help him find means of support).

The government asserts that because Mr. Montoya-Ortiz may need mobility assistance as his health deteriorates, his release plan is somehow "not maintainable." Opp. 9. But there is no evidence suggesting that Mr. Montoya-Ortiz will be unable to get what he needs in Mexico for

---

[5] The government cites to "18 U.S.C. 4205(g) or 3582(c)(1)(A)" as providing the requirements for a release plan. Section 4205(g) has no application, and § 3581(c)(1)(A) does not mention release plan requirements. Instead, 28 C.F.R. § 571.61 contains the regulatory requirements for a release plan submitted to a prison warden in conjunction with an administrative request for early release.

8

mobility assistance. The government further asserts that the release plan is inadequate because Mr. Montoya-Ortiz's medical conditions will prevent him from working to support himself. Opp. 9-10. But Mr. Montoya-Ortiz will be living rent free in his family home and multiple family members have pledged to provide whatever further support he needs. And, in any event, working on the family farm or for the church does necessarily mean hard physical labor. Similarly baseless is the government's argument that the release plan is inadequate because it does not "provide any medical documentation confirming [Mr. Montoya-Ortiz] would be seen at [the medical facility where he says he will receive treatment], or he would be scheduled to be seen once released." Opp. 10. The government provides no authority for applying this burden of proof in a release plan. There is no reason to believe that Mr. Montoya-Ortiz will be unable to receive the care he needs at his home in Mexico, where there are both public and private healthcare options.[6]

### D. Mr. Montoya-Ortiz's Release is Consistent with the Sentencing Factors.

The government wrongly argues that Mr. Montoya-Ortiz's release would be inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). Opp. 10-11. In so arguing, the government restates what was said at sentencing more than three decades ago about Mr. Montoya-Ortiz's drug offense. *Id.* But the core of the inquiry is a *reappraisal* of the sentencing factors in light of post-incarceration conduct to determine if early release would be consistent with a sentence that is "sufficient, but *not greater than necessary*" to serve the sentencing goals. 18 U.S.C. § 3553(a) (emphasis added). Mr. Montoya-Ortiz's motion explains why that reappraisal of the applicable § 3553(a) factors counsels in favor of early release given (1) his personal history and

---

[6] Undersigned counsel reached out to Mr. Montoya-Otiz's family members after receiving the government's response and confirmed that a doctor in Ojinaga has already been contacted and will treat Mr. Montoya-Ortiz. Furthermore, undersigned counsel contacted the local hospital and confirmed that the hospital provides specialized medical support for diabetics.

9

characteristics; (2) the nature and circumstances of the underlying offense, and (3) other relevant considerations such as providing just punishment, affording adequate deterrence, and protecting the public from further crimes. Mot. 27-31. The government's opposition is mostly unresponsive on each of those points.

***Personal History & Characteristics***. The Supreme Court has explained that "[i]n assessing" sentencing factors like "deterrence, protection of the public, and rehabilitation … there would seem to be no better evidence than a defendant's post-incarceration conduct." *Pepper*, 562 U.S. at 491 (quoting *McManus*, 496 F.3d, at 853 (Melloy, J., concurring)). In Mr. Montoya-Ortiz's case, that conduct is commendable. He has a nearly spotless disciplinary record over the course of three decades, and has served as a tutor, mentor, and religious leader. Mot. 25-27. That record has led multiple BOP staff members to support his release. For example, Officer J. Arnett, an education specialist at the prison, explained that Mr. Montoya-Ortiz is a "stand-out due to his behavior and respect towards staff members" and "given a chance to succeed on the outside beyond this fence inmate Montoya would make himself and his family as well as the courts very proud of the way he has changed his life around." Mot. Ex. M.

The government disputes none of that, pointing to a single instance 16 years ago when Mr. Montoya-Ortiz "stated he had [a] problem" providing a sample to test for drugs and alcohol. Opp. 11; Opp. Ex.1. Mr. Montoya-Ortiz has never had a positive test result while in prison and has never failed to provide a sample for another test.

***Nature of the Offense***. Mr. Montoya-Ortiz recognizes the serious nature of his offense of conviction. At the same time, is undisputed that the offense was non-violent, that Mr. Montoya-Ortiz had no prior criminal history of violence, and he has had no post-incarceration incidents of violence. Mr. Montoya-Ortiz's motion provided numerous examples of courts granting early

release for individuals who committed similar non-violent drug offenses and otherwise had similar characteristics. Mot. 29. The government offers no response.[7]

***Punishment, Deterrence, and Public Safety***. Courts regularly consider whether a prisoner has served his sentence in physical pain when weighing the sufficiency of punishment for crimes. Mot. 30 (citing cases). The government does not disagree. Here, Mr. Montoya-Ortiz has served most of his 31 years in substantial pain, as detailed above and extensively documented in the record. That strongly counsels in favor of finding that the punishment he has received is sufficient for his offense, and that the punishment has a sufficient deterrence effect.

As for considerations of public safety, Mr. Montoya-Ortiz's exceptional record over the last three decades of incarceration, combined with the absence of any documented acts of violence in his pre-incarceration history demonstrate beyond any reasonable doubt that he would pose no threat to the public if released. Indeed, that history shows that Mr. Montoya-Ortiz will be a productive, generous, and uplifting presence in the lives of others.

## III. CONCLUSION

For the reasons stated above and in the opening motion, this Court should grant Mr. Montoya-Ortiz's motion for a reduction in sentence and sentence him to time served.[8]

---

[7] It is notable how tenuous the government's evidence against Mr. Montoya-Ortiz was at trial in the first place. Dissenting from the Fifth Circuit opinion upholding the conviction, Judge DeMoss explained: "That the evidence against Montoya–Ortiz is circumstantial and thin, is beyond question. Though they do not expressly say so, my colleagues in the majority opinion implicitly recognize that the evidence against Montoya–Ortiz is thin." *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1183 (5th Cir. 1993) (DeMoss, J., dissenting).

[8] Mr. Montoya-Ortiz does not object to the government's request for a 14-day quarantine before his release. Opp. 12.

Dated: October 6, 2023                                   Respectfully submitted,

/s/ Amanda K. Rogers

Amanda K. Rogers, PA Bar No. 331489, *Pro Hac Vice*
With the assistance of Student-Attorneys of the Caritas Clemency Clinic, Lauren Stebbins and Casey Brogan
Caritas Clemency Clinic
Villanova University Charles Widger School of Law
299 N. Spring Mill Rd.
Villanova, PA 19085
amanda.rogers@law.villanova.edu
610-519-5229


/s/ Anna Thompson

Anna Thompson, DC Bar No. 989038, *Pro Hac Vice*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
anna.thompson@arnoldporter.com
202-942-5000


/s/ Kathryn K. Dyer

Kathryn K. Dyer, Bar No. 24103420
Criminal Defense Clinic
University of Texas Law
727 East Dean Keeton St.
Austin, TX 78705
kdyer@law.utexas.edu
512-232-1300

CERTIFICATE OF SERVICE

      The undersigned, Amanda K. Rogers, an attorney with the Caritas Clemency Clinic at Villanova University Charles Widger School of Law, hereby certifies that on October 6, 2023, I electronically filed this motion with the Clerk of the Court using CM/ECF system.

/s/ Amanda K. Rogers
<br>Amanda K. Rogers, PA Bar No. 331489, *Pro Hac Vice*
<br>With the assistance of Student-Attorneys of the Caritas Clemency Clinic, Lauren Stebbins and Casey Brogan
<br>Caritas Clemency Clinic
<br>Villanova University Charles Widger School of Law
<br>299 N. Spring Mill Rd.
<br>Villanova, PA 19085
<br>amanda.rogers@law.villanova.edu
<br>610-519-5229